Steven A. Schwartz*
steveschwartz@chimicles.com
Beena M. McDonald*
bmm@chimicles.com
**CHIMICLES SCHWARTZ KRINER**
**& DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633

Francis J. "Casey" Flynn, Jr., #304712
**LAW OFFICE OF FRANCIS J.**
**FLYNN, JR.**
5067 Metropolitan Plz
Los Angeles, CA 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

* Pro hac vice forthcoming

James J. Rosemergy*
jrosemergy@careydanis.com
**CAREY, DANIS & LOWE**
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700

**COUNSEL FOR PLAINTIFFS AND**
**THE PROPOSED CLASS**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE**

| | |
|---|---|
| RYAN ARMBRUSTER, as parent and guardian of his minor child, C.A. and YOLANDA BERRY, as parent and guardian of her minor child C.C., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BYTEDANCE INC.; BYTEDANCE LTD.; TIKTOK LTD.; TIKTOK INC.; TIKTOK LLC; TIKTOK PTE. LTD.; and TIKTOK U.S. DATA | CASE NO. 5:25-cv-2239<br><br>**JURY TRIAL DEMANDED**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF:**<br><br>(1)   **INTRUSION UPON SECLUSION**; |

113936v1

| | |
|---|---|
| SECURITY, INC.,<br><br>                       Defendants. | **(2)  UNJUST ENRICHMENT**<br><br>**(3)  VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 Ill. Comp. Stat. Ann. §505/1, et seq.** |

COME NOW, RYAN ARMBRUSTER, as parent and guardian of his minor child, C.A. ("Minor C.A.") and YOLANDA BERRY, as parent and guardian of her minor child C.C. ("Minor C.C."), individually and on behalf of all others similarly situated, (collectively, "Plaintiffs"), and hereby allege as follows against Defendants Bytedance Inc.; Bytedance Ltd.; TikTok Ltd.; TikTok Inc.; TikTok LLC, TikTok PTE. Ltd.; and TikTok U.S. Data Security, Inc. (collectively, "Defendants" or "TikTok"), based upon their own personal knowledge as to their own experiences and upon information and belief and investigation of counsel as to all other matters:

## NATURE OF THE ACTION

1.    This action is brought on behalf of Minor C.A., Minor C.C., and millions of minor Plaintiffs whose highly sensitive and personally identifiable information ("Personal Information") – including but not limited to their name, age, profile image, password, email, phone number, address, "approximate" location, social media account information, phone and social media contacts, messages sent to and received from other TikTok users, information in the clipboard of a user's device, and payment card numbers – was collected and used by the Defendants without consent of the minors or their parents or guardians, in violation of the Children's Online Privacy Protection Act of 1998 ("COPPA") and the Children's Online Privacy Protection Rule ("COPPA Rule").

2.    Defendants own and operate TikTok, one of the world's most widely used social media platforms, which allows users to create, share, and view short videos. Fully aware of the platform's appeal to children, Defendants have

knowingly permitted and encouraged children under the age of 13 to create user accounts on the TikTok app for the purpose of collecting highly sensitive and intrusive Personal Information about them and their online behavior without proper notice and parental consent. Defendants exploit this unlawfully obtained Personal Information to deliver personalized content, inundate users with targeted advertising, and share their data with third parties. The sole motive behind this illegal conduct is profit.

3.      TikTok's actions also violate a 2019 Court order arising from a lawsuit in which the United States alleged that TikTok Inc.'s and TikTok Ltd.'s predecessor companies similarly violated COPPA and the COPPA Rule by allowing children to create and access accounts without their parents' knowledge or consent, collecting data from those children, and failing to comply with parents' requests to delete their children's accounts and information.

4.      Despite these previous sanctions and order to cease their unlawful practices, Defendants have continued to exploit children's Personal Information for profit, directly violating statutory and common law designed to protect the privacy and personal information of minors.

## STATEMENT OF FACTS

5.      TikTok's user base is disproportionately made up of children and considers that "Teenagers in the U.S. are a golden audience."[1]

6.      Defendants know that TikTok is an attractive social media destination for children. Nonetheless, Defendants benefit significantly from their presence, and thus have a history of knowingly allowing children under 13 to create and use TikTok accounts without their parents' knowledge or consent, collecting extensive data from those children, and failing to comply with parents' requests to delete their children's accounts and personal information.

[1] Paul Mozur, *Chinese Tech Firms Forced to Choose Market: Home or Everywhere Else*, N.Y. Times (Aug. 9, 2016), https://www.nytimes.com/2016/08/10/technology/china-homegrown-internetcompanies-rest-of-the-world.html.

**The COPPA Rule Requires TikTok to Provide Parental Notice and Gain Parental Consent Before Collecting or Using Children's Personal Information**

7.      COPPA and the COPPA Rule are a federal statute and accompanying regulation that protect children's privacy and safety online. TikTok collects and uses Minor Plaintiffs' and young children's Personal Information without providing direct notice to their parents or gaining their parents' verifiable consent, in violation of COPPA and the COPPA Rule. TikTok also defies a Permanent Injunction that it entered into with the United States Government on March 27, 2019 (the "2019 Permanent Injunction"), which prohibited Defendants from their continued collection and use of children's Personal Information without their parents' knowledge or consent. *United States v. Musical.ly,* et.al, No. 2:19-cv-01439 (C.D. Cal. March 27, 2019) (Dkt. No. 10).

8.      TikTok continues to violate COPPA. In August 2024, the Department of Justice filed a new lawsuit against TikTok for violating COPPA and illegally collecting and using young children's Personal Information. *See United States v. Bytedance, Ltd., et. al*. (Case No. 2:24-cv-06535) (C.D. Cal.).

9.      The COPPA Rule sets requirements for any "operator of a Web site or online service directed to children, or any operator that has actual knowledge that it is collecting or maintaining Personal Information from a child [under the age of 13]." Section 312.3 of COPPA Rule, 16 C.F.R. §§ 312.3.

10.     The COPPA Rule requirements apply to TikTok. TikTok is directed to children, and TikTok has actual knowledge that it is collecting Personal Information from children.

11.     The COPPA Rule has two requirements that are pertinent to this case: (1) parental notice and (2) parental consent.

12.     First, pursuant to the COPPA Rule, TikTok must provide direct notice to parents, notifying them of "what information it collects from children,

how it uses such information and its disclosure practices for such information." 16 C.F.R. §§ 312.3(a); 312.4.

13.   Second, pursuant to the COPPA Rule, TikTok must "[o]btain verifiable parental consent prior to any collection, use, and/or disclosure of Personal Information from children." 16 C.F.R. §§ 312.3(b); 312.5.

14.   The COPPA Rule defines "Personal Information," as "individually identifiable information about an individual collected online, including:

**(1)** A first and last name;
**(2)** A home or other physical address including street name and name of a city or town;
**(3)** Online contact information as defined in this section;
**(4)** A screen or user name where it functions in the same manner as online contact information, as defined in this section;
**(5)** A telephone number;
**(6)** A Social Security number;
**(7)** A persistent identifier that can be used to recognize a user over time and across different Web sites or online services. Such persistent identifier includes, but is not limited to, a customer number held in a cookie, an Internet Protocol (IP) address, a processor or device serial number, or unique device identifier;
**(8)** A photograph, video, or audio file where such file contains a child's image or voice;
**(9)** Geolocation information sufficient to identify street name and name of a city or town; or
**(10)**   Information concerning the child or the parents of that child that the operator collects online from the child and combines with an identifier described in this definition."

Section 312.2. of COPPA Rule, 16 C.F.R. § 312.2.

### TikTok has Persistently Violated COPPA and Collected Personal Information of Minors Without Parental Notice or Consent

15.   TikTok's predecessor Musical.ly launched in 2014. Musical.ly was a social media platform where users could create and share short lip-sync videos.

16.   Musical.ly was extremely popular with young children.   By 2016,

New York Times tech reporter John Herrman wrote an article about the prevalence of young children on Musical.ly, explaining that [w]hat is striking about the app, though, is how many of its users appear to be even younger than [13]."[2]

17.    Mr. Herrman wrote:

The app does not collect or show the age of its users, but some of its top-ranked users, whose posts routinely collect millions of likes, called hearts, appear from their videos and profile photos to be in gradeschool. Until recently, the app had a feature that suggested users to follow based on their location. In New York, that feature revealed a list composed largely not just of teenagers, but of children.[3]

18.    The CEO of a social media advertising agency told the New York Times that with Muscial.ly users, "you're talking about first, second, third grade."[4]

19.    As Musical.ly was gaining popularity among elementary school kids in the United States, Beijing-based ByteDance Ltd. created TikTok in 2017.

20.    On November 9, 2017, ByteDance Ltd. purchased Musical.ly for almost $1 billion. On August 2, 2018, TikTok merged with Muiscal.ly, consolidating the accounts and data into one application.

21.    In February 2019, the United States Department of Justice filed a complaint against TikTok's predecessors, Musical.ly and Musical.ly, Inc., alleging violations of the COPPA Rule and Section 5 of the FTC Act, 15 U.S.C. § 45.

22.    The Department of Justice alleged that TikTok's Musical.ly predecessors had collected and used Personal Information from children younger

---

[2] Josh Herrman, Who's Too Young for an App? Musical.ly Tests the Limits, New York Times, Sept. 16, 2016, https://www.nytimes.com/2016/09/17/business/media/a-social-networkfrequented-by-children-tests-the-limits-of-online-regulation.html.
[3] Id.
[4] Id.

than 13 in violation of COPPA, including by (1) failing to directly notify parents of the information it collects online from children under 13 and how it uses such information, and (2) failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13. *United States v. Musical.ly, et al*., No. 2:19-cv-01439 (C.D. Cal. Feb. 27, 2019) (Dkt. No. 1).

23. In March 2019, the Honorable Otis D. Wright II entered the 2019 Permanent Injunction, in the form of a Stipulated Order for Civil Penalties, Permanent Injunction, and Other Relief against TikTok's predecessors. *Id.* at Dkt. No. 10.

24. As part of the 2019 Permanent Injunction, TikTok's predecessors were enjoined from violating the COPPA Rule, including by (1) "failing to make reasonable efforts, taking into account available technology, to ensure that a parent of a child receives direct notice of Defendants' practices with regard to the collection, use, or disclosure of Personal Information from children" and (2) "failing to obtain verifiable parental consent before any collection, use, or disclosure of Personal Information from children." 2019 Permanent Injunction at 8.

25. Despite the 2019 Permanent Injunction, millions of children under the age of 13 continue to create accounts on the TikTok Platform and continuously have their Personal Information collected and used without parental notice or verifiable parental consent.

26. On June 12, 2020, TikTok Inc. stated to the FTC that "[o]n May 11, 2019…[it] took offline all US accounts that did not go through [its recently imposed] age gate. These accounts…were not accessible to the Company. TikTok did not use or disclose the information for any purpose." TikTok Inc. also stated that it "completed on May 24, 2020" the deletion of children's data as required by the 2019 Permanent Injunction. V Pappas, as "GM of TikTok," certified on TikTok Inc.'s behalf under penalty of perjury that the prior statement was true and

correct.

27.    According to the August 2, 2024 Department of Justice complaint, after follow-up inquiry by the FTC, TikTok Inc. acknowledged that its June 12, 2020 claims had been false. In fact, TikTok Inc. retained and used data that it previously represented it "did not use," and was "not accessible" to it, and was "delet[ed]." That data included Personal Information and other data of child, teen, and adult users, including IP addresses, device IDs, device models and advertising IDs.

## I.    Even After The 2019 Permanent Injunction, TikTok Has Continued To Collect And Use Children's Personal Information Without Parental Notice Or Consent

28.    Despite the 2019 Permanent Injunction, millions of American minor children, particularly those under the age of 13, continue to join TikTok. And, TikTok continues to collect and use their Personal Information.

29.    When users create a TikTok account, TikTok uses an "age gate" and requires that the user provide their birthday – the day, month, and year.

30.    Since at least March 2019, if a Child enters a birthday that indicates that they are 13 years old or over, then they are provided with a regular TikTok account.

31.    Since at least March 2019, if a Child enters a birthday that indicates that they are younger than 13 years old, then they are provided with a "TikTok For Younger Users" or "Kids Mode" account. TikTok does not notify parents or obtain parental consent for Kids Mode accounts.

32.    Children with Kids Mode accounts can view videos but cannot post videos.

33.    TikTok's "age gate" is insufficient. Other than asking for their birthday, TikTok makes no other attempt during the sign-in process to verify the user's age or loop parents into the process in any respect.

34.    TikTok and its employees have long known that children

misrepresent their ages to pass through TikTok's age gate, and that despite other measures purportedly designed to remove children from the platform, children are ubiquitous.

35.    A former TikTok employee said that TikTok employees had pointed out videos from children who appeared to be younger than 13 that were allowed to remain online for weeks.[5]

36.    Defendants use human content moderators to review flagged accounts that potentially belong to children. In January 2020, for example, a TikTok moderator recognized that Defendants maintain accounts of children despite the "fact that we know the user is U13" (*i.e.*, under the age of 13), so long as the child's profile does not admit that fact explicitly.

37.    Another employee admitted that TikTok moderators were required to ignore any "external information" indicating that a user under review is a child.

38.    As another example, in a July 2020 chat, one of Defendants' employees circulated the profiles of numerous underage users he had identified "literally through one minute of scanning," noting "[t]his is incredibly concerning and needs to be addressed immediately."

39.    TikTok utilizes internal algorithms to predict user's ages based on their online behavior. However, TikTok refuses to use its age-prediction algorithm to identify children under the age of 13 and stop them from using regular TikTok accounts.

40.    Furthermore, until at least May 2022, TikTok allowed consumers to avoid the age gate when creating a TikTok account by allowing consumers to use login credentials from certain third-party online services, including Instagram and Google. Children were permitted to create TikTok accounts without entering their birthday if they used login credentials from Google. However, Google allowed children under the age of 13 to create Google accounts with parental consent to

---

[5] *Id.*

use Google.

41.    TikTok accounts without entering their birthday if they used login credentials from Google. However, Google allowed children under the age of 13 to create Google accounts with parental consent to use Google.

42.    Regardless of whether a Child uses a regular TikTok account or a Kids Mode account, TikTok violates the COPPA Rule by collecting and using their Personal Information without parental notice and consent.

43.    TikTok's insufficient age verification policies resulted in millions of Children gaining access to regular TikTok accounts and to the more mature content and features of a regular TikTok account.

44.    For Children with regular TikTok accounts, TikTok collects Personal Information about them, including first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

45.    For Children with Kids Mode accounts, TikTok still collects Personal Information about them, including several types of persistent identifiers, including IP address and unique device identifiers. TikTok also collects app activity data, device information, mobile carrier information, and app information from Children using Kids Mode accounts—which it combines with persistent identifiers and uses to amass profiles on children.

46.    In August 2024, the Department of Justice filed a new complaint alleging that TikTok violated COPPA and the COPPA Rule, including by (1) knowingly creating accounts for children and collecting data from those children

without first notifying their parents and obtaining verifiable parental consent; (2) failing to honor parents' requests to delete their children's accounts and information; and (3) failing to delete the accounts and information of users it knows are children.

## II.    TikTok Generates Growing Revenue from Its Unlawful Conduct

47.    When the United States brought its complaint against Musical.ly in 2019, its alleged that the app had 65 million registered account in the United States.

48.    TikTok's internal company data and documents classified 18 million of its 49 million daily users in the United States as being 14 years or younger.[6]

49.    By March 2024, TikTok reported that it had approximately 170 million monthly active users in the United States and earned nearly $15 billion in revenue in the United States from advertising and marketing.[7]

50.    TikTok uses the Personal Information collected from children (under the age of 13) to target them with advertising.

51.    TikTok targets users with specific advertisements by collecting persistent identifiers about the users and combining the identifiers with other information about the users.

52.    In other words, TikTok targets specific advertisements to children (under the age of 13) using information gathered by violating COPPA. Thus, a substantial portion of the revenue that TikTok earns from advertisements that are served on children (under the age of 13) is a direct and proximate result of TikTok's violation of COPPA.

53.    TikTok's algorithm is trained on data collected from users via the

---

[6] Raymond Zhong & Sheera Frenkel, A Third of TikTok's U.S. Users May Be 14 or Under, Raising Safety Questions, New York Times, Aug. 14, 2020, https://www.nytimes.com/2020/08/14/technology/tiktok-underage-users-ftc.html.

[7] Oxford Economics Reports: SMB's Use of TikTok Contributed $24.2 Billion to U.S. Economy in 2023, March 13, 2024, https://newsroom.tiktok.com/en-us/tiktok-economic-impact-report-2024-smb

TikTok platform and from third-party sources. Such data include videos viewed, "liked," or shared, accounts followed, comments, content created, video captions, sounds, and hashtags, as well as device and account settings such as language preference, country setting, and device type.

54.   TikTok combines this collected data with children's persistent identifiers. The collected data is thus Personal Information. Section 312.2 of COPPA Rule, 16 C.F.R. § 312.2.

55.   TikTok also provides targeting options to advertisers that are based on this collected Personal Information.

56.   For example, for behavioral targeting, TikTok targets users based on their interactions with organic and paid content, including the types of videos the user viewed.

57.   For interest targeting, TikTok's algorithm analyzes users' long-term platform activities.

## III.   Defendants Operate Under a Common Enterprise

58.   Defendants are a series of interconnected companies that operate the TikTok social media platform. Defendant ByteDance Ltd. is the parent and owner of Defendants ByteDance Inc. and TikTok Ltd. TikTok Ltd. owns Defendants TikTok LLC and TikTok Pte. Ltd. TikTok LLC in turn owns Defendant TikTok Inc., which owns Defendant TikTok U.S. Data Security Inc.

59.   Upon information and belief, a group of ByteDance Ltd. and TikTok Inc. executives, including Zhang Yiming, Liang Rubo, Zhao Penyuan, and Zhu Wenjia, direct and control TikTok's core features and development. Since 2019, ByteDance Ltd. and TikTok Inc. have promoted TikTok in the United States, spending hundreds of millions of dollars on advertising, employing U.S.-based staff and executives, and developing and distributing TikTok to run on Apple and Android devices.

60.   ByteDance Inc. and TikTok Inc. have responsibilities for developing,

providing, and supporting TikTok in the United States.

61.    TikTok Pte. Ltd. serves as the U.S. distributor of TikTok through the Apple App Store and Google Play Store.

62.    TikTok Ltd. identifies itself as the developer of TikTok in the Apple App Store, and TikTok Pte. Ltd. identifies itself as the developer of TikTok in the Google Play Store. The tiktok.com domain is registered to TikTok Ltd.

63.    Beginning in 2023, TikTok Inc. transferred Personal Information of children to TikTok U.S. Data Security Inc., which has maintained that data without notice to those children's parents or parental consent.

64.    Defendants share officers and directors. For example, TikTok Inc.'s chief executive officers between 2020 and the present (Kevin Mayer, V Pappas, and Shou Zi Chew), have simultaneously held senior positions at ByteDance Ltd., and ByteDance Ltd.'s chief executive officers (Zhang Yiming and Liang Rubo) have simultaneously served as directors of TikTok Ltd. TikTok Inc.'s Global Chief Security Officer, Roland Cloutier, also served as cyber risk and data security support for ByteDance Ltd. ByteDance Inc. and TikTok Pte. Ltd.'s officers and directors have also overlapped with each other, and with officers and directors of TikTok Inc. Defendants intertwine their finances; for example, ByteDance Ltd. provides compensation and benefits to TikTok Inc.'s CEO, and TikTok Inc. employees participate in ByteDance Ltd.'s stock option plan.

65.    Defendants have one centralized bank account for the more than a dozen products operated by ByteDance Ltd, including TikTok. Defendants operate on a "shared services" model in which ByteDance Ltd. provides legal, safety, and privacy resources, including personnel. ByteDance's largest shareholder, Zhang Yiming, signed the 2019 consent order with the United States on behalf of Musical.ly, TikTok Ltd.'s predecessor company.

66.    Defendants have operated as a common enterprise while engaging in the unlawful acts and practices alleged below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURISDICTION AND VENUE

67.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C.§1332(d)(2), because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from each Defendants.

68.    Defendants are each subject to personal jurisdiction in this district because they have substantial aggregate contacts throughout the United States and the state of California. Defendants have engaged, and continue to engage, in conduct that has a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons throughout the United States, and the state of California, and this District, and have purposely availed itself of the laws of the United States and the State of California. Defendants operate as a common enterprise, jointly engaging in actionable conduct in the State of California throughout the Class Period.

69.    This Court has general personal jurisdiction of Defendants TikTok Inc., TikTok LLC, TikTok U.S. Data Security, Inc. and ByteDance Inc. because their principal places of business are in California and because a substantial part of the event and conduct giving rise to Minor Plaintiffs' claims occurred in the State of California.

70.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because one of the Defendants maintains its principal place of business in this District, a substantial amount of the conduct at issue emanated from this District, Defendants transact business in and otherwise intentionally avail themselves of the law within this District, and thousands of potential Class Members reside in this District.

## DIVISIONAL ASSIGNMENT

71.    This Division is proper pursuant to Northern Dist. L.R. 3-5(b) as one of the Defendants is headquartered in San Jose, California and a significant amount of the conduct at issue took place and had an effect in San Jose.

## PARTIES

72.    Plaintiff C.A., is a natural person and a resident and citizen of Missouri. C.A. was under the age of 13 during the Class Period. C.A.'s parent and legal guardian is Ryan Armbruster, who is also a resident and citizen of Missouri. During the Class Period, Plaintiff C.A. had a TikTok account and regularly viewed content on the TikTok platform. During the Class Period, Defendants collected C.A.'s Personal Information for the purpose of tracking C.A.'s activity and utilizing targeted advertisements. Defendants never obtained consent from nor notified C.A.'s parent and legal guardian Ryan Armbruster at any point prior to or during its collection and use of C.A.'s Personal Information. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from Collecting Personal Information from children under the age of 13, and therefore, this conduct could not have been reasonably discovered earlier through investigation.

73.    Plaintiff C.C., is a natural person and a resident and citizen of Illinois. C.C. was under the age of 13 during the Class Period. C.C.'s parent and legal guardian is Yolanda Berry, who is also a resident and citizen of Illinois. During the Class Period Plaintiff C.C. had a TikTok account and regularly viewed content on the TikTok platform. During the Class Period, Defendants collected C.C.'s Personal Information for the purpose of tracking C.C.'s activity and utilizing targeted advertisements. Defendants never obtained consent from nor notified C.C.'s parent and legal guardian Yolanda Berry at any point prior to or during its collection and use of C.C.'s Personal Information. Defendants were bound by the 2019 Permanent Injunction that prohibited Defendants from

Collecting Personal Information from children under the age of 13, and therefore, this conduct could not have been reasonably discovered earlier through investigation.

74.    Defendant ByteDance Inc. is a Delaware corporation with its principal place of business at 1199 Coleman Avenue, San Jose, California, 95110. ByteDance Inc. is wholly owned by ByteDance Ltd. ByteDance Inc. transacts or has transacted business in this District and throughout the United States.

75.    Defendant ByteDance Ltd. is a Cayman Islands company with its headquarters in China. It has offices in the United States and in other countries. ByteDance Ltd. created and owns the proprietary algorithm that underlies TikTok's "For You" feed. ByteDance Ltd. transacts or has transacted business in this District and throughout the United States.

76.    Defendant TikTok Inc. is a California corporation with its principal place of business at 5800 Bristol Parkway, Suite 100, Culver City, California 90230. TikTok Inc. transacts or has transacted business in this District and throughout the United States.

77.    Defendant TikTok LLC is a Delaware limited liability company with its headquarters at 5800 Bristol Parkway, Culver City, CA 90230. TikTok LLC wholly owns TikTok Inc.

78.    Defendant TikTok U.S. Data Security, Inc. is a Delaware corporation with its principal place of business shared with TikTok Inc and TikTok LLC. TikTok U.S. Data Security Inc. is a subsidiary of TikTok Inc. and is a subsidiary TikTok Inc. and is described as the entity that "controls access to protected U.S. user data, content recommendation, and moderation systems" for U.S. consumers on the TikTok. As such, TikTok U.S. Data Security transacts or has transacted business in this District and throughout the United States.

79.    Defendant TikTok Pte. Ltd. is a Singapore company with its principal place of business at 8 Marina View Level 43 Asia Square Tower 1,

Singapore, 018960. TikTok Pte. Ltd. is listed in the Apple App Store and the Google Play Store as the "seller" of the TikTok app. TikTok Pte. Ltd. transacts or has transacted business in this District and throughout the United States.

80.     Defendant TikTok Ltd. is a Cayman Islands company with its principal place of business in Singapore or China. TikTok Ltd. TikTok Ltd. wholly owns TikTok LLC and TikTok Pte. Ltd. and is listed in the Apple App Store as the "developer" of the TikTok app. TikTok Ltd. transacts or has transacted business in this District and throughout the United States.

## TOLLING

81.     Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Minor Plaintiffs, nor their respective parent or guardian, did not know (and had no way of knowing) that their Personal Information was intercepted and unlawfully disclosed to third parties, as Defendants purported to be abiding by the terms of the 2019 Permanent Injunction prohibiting this conduct.

## CLASS ALLEGATIONS

82.     Plaintiffs' reallege and incorporate by reference all of the above allegations.

83.     The Class Period is defined as March 28, 2019 to the present.

84.     Plaintiffs bring this nationwide class action as parent and guardian of their respective minor child and on behalf of all others similarly situated, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

85.     The Classes that Plaintiffs seek to represent are defined as follows:

**Nationwide Class**
All United States residents (who were younger than 13 years old when they started using TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without notifying a parent and obtaining verifiable parental consent beforehand (the "Nationwide Class").

**Missouri Subclass**

All Missouri residents (who were younger than 13 years old when they started using TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without notifying a parent and obtaining verifiable parental consent beforehand (the "Missouri Subclass").

**Illinois Subclass**

All Illinois residents (who were younger than 13 years old when they started using TikTok) from whom Defendants collected and/or used Personal Information during the Class Period without notifying a parent and obtaining verifiable parental consent beforehand (the "Illinois Subclass").

86.     Collectively, the Nationwide Class, the Missouri Subclass, and the Illinois Subclass are referred to as the "Classes" or "Class Members."

87.     Excluded from the Classes are the following individuals and/or entities: Defendants and Defendants' parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendants has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

88.     Plaintiffs reserve the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

89.     <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. While the exact number of Class Members is unknown to Plaintiffs at this time and such number is exclusively in the possession of Defendant, upon information and belief, millions of minor individuals are implicated.

90.     <u>Commonality</u>: Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the

Classes that predominate over questions which may affect individual Class Members, includes the following:

      a.    Whether Defendants collected the Personal Information of children;

      b.    Whether Defendants had knowledge they were collecting the Personal Information of children;

      c.    Whether Defendants notified parents as required by COPPA prior to collecting the Personal Information of children;

      d.    Whether Defendants obtained verifiable parental consent as required by COPPA prior to collecting the Personal Information of children;

      e.    Whether the collection of Personal Information of children is highly offensive to a reasonable person;

      f.    Whether the collection of Personal Information of children without parental consent is sufficiently serious and unwarranted as to constitute an egregious breach of social norms;

      g.    Whether Defendants' conduct constituted an invasion of privacy based on common law protection against intrusion upon seclusion under the laws of Missouri and Illinois.

      h.    Whether Defendants' conduct was unfair;

      i.    Whether Defendants' conduct was unlawful;

      j.    Whether Defendants' conduct violated the consumer protection act of Illinois;

      k.    Whether Minor Plaintiffs and the Classes are entitled to monetary damages and the measure of those damages;

      l.    Whether Defendants were unjustly enriched by their conduct under the laws Missouri and Illinois;

      m.    Whether Minor Plaintiffs are entitled to non-restitutionary disgorgement based on Defendants' unjust enrichment;

      n.    Whether Defendants fraudulently concealed their conduct; and

o.    Whether Minor Plaintiffs and the Classes are entitled to injunctive or other equitable relief.

91.    <u>Typicality</u>: Minor Plaintiffs' claims are typical of those of the other members of the Classes because Plaintiffs, as minor children, like every other Class Member, were exposed to virtually identical conduct and now suffer from the same violations of the law as each other member of the Classes

92.    <u>Adequacy:</u> Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action and data breach litigation, and Plaintiffs intend to prosecute this action vigorously.

93.    <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole.  Defendants' policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenges of these policies hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

94.    <u>Superiority and Manageability:</u> The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum

simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendants. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

95.    The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendants would necessarily gain an unconscionable advantage since Defendants would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

96.    The litigation of the claims brought herein is manageable. Defendants' uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

97.    Adequate notice can be given to Class Members directly using information maintained in Defendants' records.

98.    Unless a Class-wide injunction is issued, Defendants may continue to act unlawfully as set forth in this Complaint.

99.    Further, Defendants have acted on grounds that apply generally to

the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

## CAUSES OF ACTION
## COUNT I
## INTRUSION UPON SECLUSION
### (Against all Defendants on behalf of all Classes)

100.  Plaintiffs reallege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

101.  Minor Plaintiffs and members of the Classes possess a legally protected interest in their Personal Information as defined by COPPA, which includes first and last name, age, email address, phone number, persistent identifiers for the device(s) used to access TikTok, social media account information, and profile image(s), as well as photographs, videos, and audio files containing the user's image and voice and the metadata associated with such media (such as when, where, and by whom the content was created), usage information, device information, location data, image and audio information, metadata, and data from cookies and similar technologies that track users across different websites and platforms.

102.  Minor Plaintiffs and the members of the Classes maintained a reasonable expectation that when using TikTok, the Defendants would not collect and/or use their Personal Information.

103.  Minor Plaintiffs' and the Class Members' reasonable expectation of privacy were supported by COPPA's prohibition on TikTok collecting and/or using Personal Information from children under 13 unless TikTok directly notified their parents and obtained verifiable parental consent.

104.  Defendants intentionally intruded upon the Minor Plaintiffs' and all Class members' seclusion by improperly collecting and using their private Personal Information, without obtaining consent from the Minor Plaintiffs' parents and/or guardians and the members of the Classes. Defendants

intentionally intruded upon the Minor Plaintiffs' and members of the Classes' seclusion by improperly collecting and using their private Personal Information, without providing direct notice to their parents or obtaining verifiable parental consent, as required by COPPA.

105.  Defendants' intrusion upon the seclusion of Minor Plaintiff and Class Members was substantial, and would be highly offensive and objectionable to a reasonable person, constituting an egregious breach of social norms, as is evidenced by consumer surveys, and academic studies detailing the harms of tracking children online, centuries of common law, state and federal statutes and regulations including COPPA and FTC regulations, legislative commentaries, enforcement actions undertaken by the FTC, industry standards and guidelines, scholarly literature on consumers' reasonable expectations, the fines imposed on TikTok by the FTC, as well as the reforms required by the 2019 Permanent Injunction entered into by TikTok, which it has now been accused of violating.

106.  Defendants' intrusion upon the seclusion of Minor Plaintiffs and members of the Classes was also substantial and highly offensive to a reasonable person, constituting an egregious breach of social norms causing anguish and suffering because TikTok uses the collected Personal Information for an improper purpose, including by targeting Minor Plaintiffs and members of the Classes with behavioral advertising.

107.  None of the Minor Plaintiffs and members of the Classes, nor their parents and/or guardians consented to Defendants' collection and use of their Personal Information.

108.  Minor Plaintiffs and members of the Classes suffered actual and concrete injury as a result of Defendants' intrusion upon their seclusion.

109.  Plaintiffs and members of the Classes seek appropriate relief for Minor Plaintiffs' and the Classes' injury, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk

of future invasions of privacy, restitution, disgorgement of profits made by Defendants as a result of their invasion of Minor Plaintiffs' and members of the Classes' privacy, punitive damages, and any other relief that the Court may deem just and proper.

## COUNT II
## UNJUST ENRICHMENT
### (Against All Defendants by All Plaintiffs and All Classes)

110.  Plaintiffs reallege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

111.  By virtue of the unlawful, unfair, and deceptive conduct alleged herein, Defendants have realized millions of dollars in revenue from their collection and use of the Personal Information of Minor Plaintiffs and all Class Members, through behavioral advertising and commercialization of Minor Plaintiffs' Personal Information.

112.  Defendants' ill-gotten gains were monetary benefits conferred upon Defendants by Minor Plaintiffs and all Class Members. It would be inequitable and unjust to permit any of the Defendants to retain the economic benefits they have obtained through advertising and commercialization derived from the Personal Information of Minor Plaintiffs and all Class Members.

113.  Defendants will be unjustly enriched if they are permitted to retain the economic benefits conferred upon them by Minor Plaintiffs and all Class Members, through their unlawful, unfair, unauthorized, and impermissible use of the Personal Information of the Minor Plaintiffs and all Class Members, and allowing Defendants to retain the profits from their unlawful, unauthorized, and impermissible use of the Minor Plaintiffs' and all Class Members' Personal Information would be unjust and contrary to public policy.

114.  Minor Plaintiffs and all Class Members are therefore entitled to recover the amounts realized by the Defendants at the expense of Plaintiffs and all Class Members.

115.   Plaintiffs, as parents and guardians of their respective Minor Plaintiff and on behalf of all Class Members, do not seek to recover in this claim for their own economic harm and have no adequate remedy at law that would divest Defendants of their ill-gotten and unjust profits. To the extent that money damages, if available, would constitute an adequate remedy at law barring recovery under this claim, Plaintiffs, as parent and guardian of their respective Minor Plaintiff and on behalf of all Class Members, assert a claim for non-restitutionary disgorgement as an alternative remedy. Minor Plaintiffs and all Class Members are entitled to non-restitutionary disgorgement of Defendants' ill-gotten gains, and/or the imposition of a constructive trust to recover the amount of Defendants' ill-gotten gains.

## COUNT III
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### 815 Ill. Comp. Stat. Ann. §505/1, et seq.
### (Against all Defendants by Plaintiff C.C., by and through their parent Yolanda Berry, and the Illinois Subclass Members)

116.   Plaintiffs reallege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

117.   This claim is asserted against Defendants pursuant to 815 Ill. Comp. Stat. Ann. §505/1, *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act.

118.   815 Ill. Comp. Stat. Ann. §505/2 declares that "unfair methods of competition and unfair or deceptive acts or practices … in the conduct of any trade or commerce are hereby declared unlawful … In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act."

119.   Pursuant to of 815 Ill. Comp. State. Ann. §505/10a(a), any person who has suffered actual damages as a result of a violation of the Illinois

Consumer Fraud and Deceptive Business Practices Act "may bring an action to obtain actual economic damages or any other relief which the court deems proper."

120.  Pursuant to 815 Ill. Comp. State. Ann. §505/10a(c), "the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorneys' fees and costs."

121.  Plaintiff C.C. and Defendants are each a "person" within the meaning of 815 Ill. Comp. State. Ann. §505/1(c).

122.  Defendants through their conduct as described above, engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of their trade and commerce, as defined in 815 Ill. Comp. Stat. Ann. §505/1, et seq., within the State of Illinois.

123.  Defendants engaged in "unfair" business acts and/or practices. Defendants at all relevant times knowingly violated legal duties and public policy by unfairly and unlawfully collecting the Personal Information of C.C. and the Illinois Subclass Members without notifying their parents and obtaining verifiable parental consent and by tracking, profiling, and targeting those children with behavioral advertising for Defendants' commercial financial gain. These practices are unethical, unscrupulous, and substantially injurious to children, and thus constitutes an unfair practice. The harm these practices caused to C.C. and Illinois Subclass Members outweigh their utility, if any. Defendants engaged in "deceptive" business acts and/or practices by making material misrepresentations and omissions regarding the privacy violations and unlawful conduct and practices outlined herein that constituted deceptive trade acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

124.  As outlined herein, TikTok represented that TikTok Kids Mode was designed for children under 13 by representing to children who identified themselves as being under 13 that the child is "about to access a TikTok

experience designed just for you." In Kids Mode, a user can view videos, but cannot upload videos, post information publicly, or message other users.

125. Defendants' representation is false and misleading. TikTok Kids Mode is not designed to be legally appropriate for children under 13. In fact, TikTok Kids Mode violates COPPA and the privacy rights of children under 13, including by collecting and using their Personal Information without providing direct notice to their parents or obtaining parental consent.

126. Defendants' marketing of Kids Mode was deceptive — the inherent characteristics, content, and features of TikTok Kids Mode, including the representation that it is an "experience" designed for kids, along with the restrictions on uploading videos, posting information, or messaging other users, were plainly intended for and meant to attract children under 13, through which Defendants intended to and did collect Personal Information to serve these children behavioral advertising for substantial commercial gain.

127. As outlined herein, Defendants at all times had actual knowledge of their non-compliance with COPPA and other applicable privacy-related laws. Further, Defendants at all times had actual knowledge of their own collection of the Personal information from C.C. and Illinois Subclass Members and the tracking, profiling, and targeting of those children for lucrative behavioral advertising.

128. As outlined herein, Defendants intentionally designed TikTok to, among other things, attract minor children by making child-directed content available to them so that TikTok could collect the Personal Information of those children for substantial commercial gain.

129. TikTok was aware at all times that a significant portion of its users were under the age of 13 and nonetheless collected the Personal Information of those children for the purpose of serving those children behavioral advertising for substantial commercial gain. After entering into a Permanent Injunction with the

United States in 2019 intended to prohibit Defendants from their continued collection or use of the Personal Information of children under the age of 13, Defendants purposefully sought to undermine their compliance through, among other practices, implementation of a woefully inadequate age-gating system, and monitoring policies and procedures designed to allow them to continue knowingly collecting and using the Personal Information of children.

130.    Defendants are considered by the FTC to be "operators" as defined under COPPA and FTC regulations. In particular, Defendants systematically collected and/or used Personal Information from minor children in violation of COPPA, and therefore the FTC Act, to serve them targeted, behavioral advertising by inter alia:

    a.  Failing to provide sufficient notice of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(d) of COPPA, 16 C.F.R. § 312.4(d);

    b.  Failing to provide direct notice to parents of the information Defendants collected, or the information that was collected on Defendants' behalf, online from children under 13, how Defendants used such information, their disclosure practices, and all other required content, in violation of Section 312.4(b) and (c) of COPPA, 16 C.F.R. § 312.4(b)-(c);

    c.  Failing to obtain verifiable parental consent before any collection or use of Personal Information from children under 13, in violation of Section 312.5 of COPPA, 16 C.F.R. § 312.5; and

    d.  Failing to establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of Personal Information collected from children under 13, in violation of Section 312.8 of

COPPA, 16 C.F.R. § 312.8.

131.  Violations of COPPA and the accompanying FTC regulations "shall be treated as a violation of a rule defining an unfair … act or practice prescribed under 15 U.S.C. § 57a(a)(1)(B)." 15 U.S.C. § 6502(c). These rules define unfair acts or practices in or affecting commerce within the meaning of 15 U.S.C. § 45(a)(1), which is the model for the various consumer protection statutes in the several states, including 815 Ill. Comp. Stat. Ann. §505/1, et seq.

132.  Accordingly, Defendants engaged in unfair and unlawful trade acts or practices in violation of 815 Ill. Comp. Stat. Ann. §505/1, et seq., which is modeled after, proscribes the same conduct as, and gives deference to the definitions of the FTC Act.

133.  Because Defendants knew or should have known that their conduct was deceptive and/or unfair under 815 Ill. Comp. Stat. Ann. §505/1, et seq., their conduct was willful.

134.  These unfair and deceptive acts and practices have caused Plaintiff C.C. and Illinois Subclass Members to suffer losses of money and property.

135.  As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff C.C. and Illinois Subclass Members have suffered damages and are entitled to relief under the Illinois Consumer Fraud and Deceptive Business Practices Act. 815 Ill. Comp. Stat. Ann. §505/10a(a) and (c), but not limited to, actual damages, attorneys' fees, and costs.

136.  Accordingly, Plaintiff Yolanda Berry, as parent and guardian of C.C. and on behalf of Illinois Subclass Members, thus seeks (a) a declaration that Defendants' acts and practices as described above violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. §505/1, *et. seq.*; (b) an award of actual damages; (c) an award of attorneys' fees and costs pursuant to 815 Ill. Comp. Stat. Ann. §505/10a(c); (d) an order enjoining Defendants from continuing to engage in the unfair and deceptive acts and

practices described above; and (e) any further relief the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, as parent and guardian of their respective Minor Plaintiff and on behalf of the Classes, respectfully requests relief as follows:

A.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and counsel for Plaintiffs as Class Counsel;

B.    For an order declaring the Defendants' conduct violates the statutes and causes of action referenced herein;

C.    For an order finding in favor of Plaintiffs and Class Members on all counts asserted herein;

D.    Ordering Defendants to pay for lifetime credit monitoring and dark web scanning services for Minor Plaintiffs and the Classes;

E.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F.    For prejudgment interest on all amounts awarded;

G.    For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendants' conduct;

H.    For injunctive relief as pleaded or as the Court may deem proper; and

I.    For an order awarding Plaintiffs and Class Members their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J.    Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury for all issues so triable.

Dated:  March 4, 2025                    Respectfully Submitted,

By:  /s/ Francis J. "Casey" Flynn, Jr.

Francis J. "Casey" Flynn, Jr., #304712
**LAW OFFICE OF FRANCIS J. FLYNN, JR.**
5067 Metropolitan Plz
Los Angeles, CA 90036
Tele: 314-662-2836
Email: casey@lawofficeflynn.com

Steven A. Schwartz*
Beena M. McDonald*
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 645-4720
Fax: (610) 649-3633
sas@chimicles.com
bmm@chimicles.com

James J. Rosemergy*
**CAREY, DANIS & LOWE**
8235 Forsyth, Suite 1100
St. Louis, MO 63105
Telephone: (314) 725-7700
Fax: (314) 721-0905
jrosemergy@careydanis.com

* Pro hac vice applications forthcoming

**ATTORNEYS FOR RYAN ARMBRUSTER, AS PARENT AND GUARDIAN OF HIS MINOR CHILD, C.A. AND YOLANDA BERRY, AS PARENT AND GUARDIAN OF HER MINOR CHILD C.C., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED**